Argued and submitted November 30, 1983, reversed and remanded for trial February 22, reconsideration denied April 6, petition for review denied April 24, 1984 (297 Or 82)

# STATE OF OREGON,
*Appellant,*

*v.*

# JOE NATHAN GREEN,
*Respondent.*

## (C83-03-31059; CA A28424)

676 P2d 938

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for appellant. With him on the brief were Dave Frohnmayer, Attorney General, and James E. Mountain, Jr., Solicitor General, Salem.

John Clinton Geil, Portland, argued the cause for respondent. With him on the brief were Timothy Grabe and Rieke, Geil & Savage, Portland.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

GILLETTE, P. J.

### GILLETTE, P. J.

In this criminal proceeding, the state appeals from a pretrial order granting defendant's motion to suppress evidence. The state contends that the trial court erred in concluding that the police officers lacked probable cause to search and arrest defendant. We reverse.

The facts are not disputed. On the evening of March 2, 1983, Officers Mason and Butler of the Portland Police Bureau were patrolling downtown Portland in a marked police car. At approximately 5:30 p.m., they observed defendant in the company of two men, Williams and Antoine. Mason knew from personal experience and from informants that Williams was a Ritalin dealer. The three men were standing and talking in the vicinity of the Lotus Bar near S. W. Third and Salmon. Mason characterized this area as one of the major Ritalin distribution places in Portland.

Approximately 15 minutes later, the officers were stopped at a red light at the corner of S. W. Third and Salmon. From this vantage point, the officers saw defendant standing near the curb in front of the Lotus Bar with Antoine and a man later identified as Hansen. Hansen handed defendant a bill, the denomination of which the officers could not ascertain. As he took the money from Hansen, defendant reached into his pocket and took out a small object which he held between his thumb and forefinger. The officers could not see what the object was.

As defendant started to hand the object to Hansen, the officers' traffic light turned green. At that point, defendant apparently saw the police car and reacted by jerking his hand back and replacing the object in his right pocket. Defendant and the other men then "acted kind of nonchalant." The officers drove their car up to the three men, and Mason walked up to defendant and asked for permission to search him. Defendant responded "go ahead" but, as Mason reached for defendant's right pant pocket, defendant said "but not there." Mason then searched defendant and found a Ritalin tablet and a five dollar bill in his right watch pocket. Another Ritalin tablet was found in his pocket after he was formally placed under arrest.

At the suppression hearing, Mason testified that, during his six-year police career, he had been involved in

numerous narcotics-related arrests. He had spent over two years in the narcotics detail of the Vice Division and, during this time, had experience with the drug Ritalin through informants, personal "buys" from Ritalin dealers and the execution of search warrants at places where the drug was sold and used. Because he had personally observed and had taken part in Ritalin buys on the street, he knew how buyers approach dealers, how money is exchanged and how the drugs change hands.

The trial court concluded that the officers did not have "reasonable suspicion" to believe that a crime was being committed when they "stopped" defendant and that Mason's search of defendant, after he withdrew his consent, was without probable cause. Accordingly, the court suppressed the evidence seized. This appeal followed.

The state contends that Mason had probable cause to arrest defendant at the time he first approached him and, therefore, the search was valid as one incident to arrest. We agree.

■       Probable cause to arrest exists when

"* * * there is a substantial objective basis for believing that more likely than not an offense has been committed and a person to be arrested has committed it." ORS 131.005(11).

When Mason got out of the police car and contacted defendant, he was operating under the following pertinent facts:[1] (1) defendant had been seen just 15 minutes before with a known Ritalin dealer; (2) the vicinity of the Lotus Bar was known as a major Ritalin distribution area; (3) Mason's training and experience told him that what he saw was a street buy of Ritalin; and (4) defendant jerked back his hand and replaced a small object in his pocket on seeing the approaching police car. In our view, defendant's attempt to conceal something quickly in apparent response to the presence of police combined with the other factors gave Mason an objective basis to believe it more likely than not that defendant was engaged in the illegal sale of a controlled substance. *See State v.*

---

[1] In assessing probable cause, we give no weight to defendant's withdrawal of his consent to be searched. *See State v. Gressel,* 276 Or 333, 338, 554 P2d 1014 (1976).

*Norman,* 66 Or App 443, 674 P2d 626 (1983); *State v. Hunt,* 15 Or App 76, 79, 514 P2d 1363 (1973), *rev den* (1974).

■    The fact that the search preceded the formal arrest does not destroy its character as a search incident to arrest, because probable cause to arrest existed at the time of the search. *Rawlings v. Kentucky,* 448 US 98, 111, 100 S Ct 2556, 65 L Ed 2d 633 (1980); *State v. Elk,* 249 Or 614, 621, 439 P2d 1011 (1968). The two Ritalin tablets and the five dollar bill should not have been suppressed.

Reversed and remanded for trial.