Submitted February 25, reversed and remanded July 1, 2015

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRUCE COLE McHENRY,
aka Cole Bruce McHenry,
*Defendant-Appellant.*

Curry County Circuit Court
12CR1023; A154344

354 P3d 750

Peter Gartlan, Chief Defender, and Erin Snyder, Deputy Public Defender, Office of Public Defense Services, filed the brief for appellant.

Ellen F. Rosenblum, Attorney General, Anna M. Joyce, Solicitor General, and Sarah M. Villanueva, Assistant Attorney General, filed the brief for respondent.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

GARRETT, J.

## GARRETT, J.

Defendant appeals a judgment of conviction for interfering with a peace officer. Police officers responded to an anonymous 9-1-1 call reporting a fight and a person bleeding in defendant's home. When officers arrived, they observed several juveniles outside the home, drinking alcohol. Believing that they had probable cause to suspect the crime of furnishing alcohol to minors and that exigent circumstances existed, officers entered the home, found defendant, and ordered him to remain present. Defendant left the scene before officers could interview him. Defendant was convicted of interfering with a peace officer by failing to obey a lawful order, ORS 162.247(1)(b).

On appeal, defendant assigns error to the trial court's denial of his motion to suppress the evidence that he disobeyed the police order. Defendant reasons that that evidence derived from a warrantless search of his home that was unlawful because, regardless of purported exigent circumstances, police lacked probable cause to suspect that any crime had occurred. We reject defendant's second assignment of error without written discussion. On review for legal error, *State v. Warner*, 181 Or App 622, 624, 47 P3d 497, *rev den*, 335 Or 42 (2002), we agree with defendant that the warrantless entry into his home was not supported by probable cause and that the trial court consequently erred in denying the motion to suppress. We therefore reverse and remand.

The relevant facts are undisputed. Officer Lorentz and another deputy arrived at the home that defendant shared with his mother, Geinger. At the time of their arrival, the deputies knew only that an anonymous caller had reported a fight and a person bleeding inside the home. The deputies saw approximately nine juveniles outside the home and heard loud music playing inside. When Lorentz announced his presence, five members of the group ran inside and closed the door. Lorentz questioned the four remaining people. At trial, Lorentz testified that some of them appeared to be intoxicated, admitted drinking alcohol, and identified defendant as "the host of the party involving the alcohol." They also gave Lorentz their dates of birth; they were all underage. Lorentz testified that they were

"ambivalent" about where the alcohol came from. The four juveniles denied that a fight had occurred or that anyone had been injured.

Lorentz knocked on the front door, which swung open. Through the open door, Lorentz observed multiple open cans of beer and "red Solo cups, Dixie cups." He also noticed a plate containing what appeared to be marijuana. From where he was standing on the patio, Lorentz ordered everyone present to leave the home and wait outside. Approximately 15 to 20 people complied. After Lorentz called out for defendant and received no answer, he entered the home. He later testified that he believed the crime of furnishing alcohol to minors had been committed and he was concerned about the possible destruction of evidence (due to the disposal of containers as well as the dissipation of alcohol from the juveniles' blood). The second officer, Freeman, found defendant hiding in a bathroom. Lorentz told defendant that he was not free to leave. Lorentz and other officers proceeded to interview the guests and issue citations to the minors present. During that time, with the deputies' permission, defendant was moving about, inside and outside the house, cleaning up. When the officers were done interviewing others, they looked for defendant but were unable to locate him.

Several days later, Lorentz returned to the residence, found defendant, issued him *Miranda* warnings, and interviewed him. Defendant acknowledged that he had heard Lorentz tell him not to leave the scene. Defendant said that he had fallen asleep in a car. Defendant also told Lorentz that "he was the host of the party" but, when asked if he had "brought the alcohol to the party," defendant "said no."

Defendant was charged with one count of interfering with a peace officer, ORS 162.247(1)(b), by refusing to obey a lawful order. At his bench trial, defendant moved to suppress the physical and testimonial evidence resulting from Lorentz's warrantless search of the home. The state argued that Lorentz's warrantless entry was supported by probable cause based on his observations and interactions outside the home and exigent circumstances. The trial court denied the motion, expressly concluding that police had probable cause that alcohol had been furnished to minors "because of the

statements made by the juveniles outside the residence that [defendant] was hosting the party." The court also determined that exigent circumstances supported the warrantless entry into defendant's home. The court convicted defendant and sentenced him to 24 months of probation.

On appeal, in his first assignment of error, defendant argues that the trial court should have granted the motion to suppress because the warrantless entry was unlawful. The state reprises its arguments below that the entry was justified by probable cause and exigent circumstances.

We review a trial court's denial of a motion to suppress for legal error, deferring to the court's findings of fact if they are supported by evidence in the record. *State v. Vasquez-Villagomez*, 346 Or 12, 23, 203 P3d 193 (2009). "A warrantless search is *per se* unreasonable [under Article I, section 9 of the Oregon Constitution] unless the police act within one of the established exceptions to the warrant requirement." *State v. Barraza*, 206 Or App 505, 509, 136 P3d 1126 (2006). One of those exceptions allows police to act without a warrant when they have probable cause to suspect a crime and exigent circumstances exist. *Id.* Probable cause means that "'the arresting officer subjectively believes that it is more likely than not that an offense has been committed and that belief is objectively reasonable.'" *Id.* (quoting *State v. Williams*, 178 Or App 52, 60, 35 P3d 1088 (2001)). Exigent circumstances are those in which police must "act swiftly to prevent danger to life or serious damage to property, or to forestall a suspect's escape or the destruction of evidence." *Id.* (quoting *State v. Stevens*, 311 Or 119, 126, 806 P2d 92 (1991)).

We need not consider whether exigent circumstances existed, because we agree with defendant that Lorentz lacked an objectively reasonable belief that the crime of furnishing alcohol to minors had more likely than not been committed.[1] The trial court concluded that Lorentz

---

[1] ORS 471.410(2) provides that

"[n]o one other than the person's parent or guardian may sell, give or otherwise make available any alcoholic liquor to a person under the age of 21 years. *** A person violates this subsection who sells, gives or otherwise makes available alcoholic liquor to a person with the knowledge that the person to whom the liquor is made available will violate this subsection."

had probable cause because of the statements made by the minors outside the home. The record reflects (as the trial court found) that the minors admitted drinking alcohol and described defendant as the "host" of the party. But none of them explained where the alcohol had come from; Lorentz testified that they were "ambivalent" on that point. The question thus reduces to whether, on those facts, Lorentz could form an objectively reasonable belief that the alcohol had *more likely than not* been furnished to the juveniles by someone in the house.

Defendant contends that *Barraza* controls.[2] In *Barraza*, a police officer, Duncan, responded to a complaint about "'teenagers partying' at the defendant's house." 206 Or App at 507. The officer saw three people through the window, two of whom appeared to be minors. One of the minors had an open can of beer sitting next to him. *Id*. Before entering the house, Duncan established that Velasco and Calhoun were adults and that Hernandez and Wescott were minors. *Id*. Hernandez and Wescott denied obtaining beer from Velasco or Calhoun and told Duncan that they had brought their own beer. *Id*. The state argued that "Hernandez's admission that he was a minor and had been drinking provided objectively reasonable probable cause to believe that the crime of furnishing alcohol was being committed." *Id*. at 509. We disagreed:

> "Duncan's initial conclusion that Hernandez had been given the beer by someone in the house amounts to mere speculation. There were at least two explanations for how Hernandez came to be in possession of alcohol: (1) someone at defendant's house gave it to him and (2) he obtained it somewhere else. Although the presence of an innocent explanation does not necessarily dispel probable cause, the incriminating explanation must be *the more likely one* when all of the facts are considered. * * * In this case, nothing about the circumstances indicated that the incriminating explanation was more likely to be true."

---

[2] Defendant also contends that *State v. DeKuyper*, 74 Or App 534, 536, 703 P2d 261 (1985), controls. We disagree. Although it involved similar facts, that case did not require us to decide whether police would have had probable cause that the defendant or someone else had furnished alcohol to minors when police actually made their warrantless entry into the defendant's home. *Id*.

*Id.* at 510 (emphasis added). Defendant argues that, as in *Barraza*, all that Lorentz knew at the time that he entered defendant's home was that minors had been drinking alcohol, and that, without any additional information about who had *provided* the alcohol, it was at least as likely that the minors had furnished their own. That someone in the home had given it to them had to be, under *Barraza*, the "more likely" incriminating explanation.

The state counters that, because the present case involved "an ongoing party with at least 25 people, where minors were drinking" and the minors identified defendant as the "host," it was "objectively reasonable—unlike in *Barraza*—to believe that the crime of furnishing alcohol to minors was occurring."

We are not persuaded that those facts meaningfully distinguish this case from *Barraza*. The guests' description of defendant as the "host" does not signify that defendant provided the alcohol; it is equally understandable as simply an acknowledgement that the party was occurring at defendant's house. As for the fact that this was a "party," whereas *Barraza* involved a small handful of people, the state does not explain why that changes the analysis. We presume that the state's point is to suggest that, as the size of a party increases, so increases the likelihood that guests will be given alcohol by someone else present. In the absence of a developed argument for that proposition, we cannot conclude that the state's "incriminating explanation" is "the more likely one when all of the facts are considered." *Barraza*, 206 Or App at 510.

Accordingly, we agree with defendant that Lorentz did not have the requisite probable cause to justify his warrantless entry into defendant's home. Defendant further argues that the unlawful search requires suppression of the evidence in question—the observation of defendant in the bathroom and that he left the scene after being told not to, and his inculpatory statements to Lorentz a week later— because, under these facts, "had the officers acted within the limits of their authority[,] * * * defendant would not have disobeyed their order." Whenever the state has obtained evidence following the violation of a defendant's Article I,

section 9, rights, "it is presumed that the evidence was tainted by the violation and must be suppressed." *State v. Miller*, 267 Or App 382, 398, 340 P3d 740 (2014) (citing *State v. Unger*, 356 Or 59, 84, 333 P3d 1009 (2014)). The state may rebut that presumption by establishing that the disputed evidence "'did not derive from the preceding illegality.'" *Id.* (quoting *State v. Hall*, 339 Or 7, 25, 115 P3d 908 (2005), *holding modified by Unger*, 356 Or at 84).

As the state has advanced no argument on that question, it has not met its burden to show that, even without Lorentz's unlawful entry, the evidence sought to be suppressed—defendant's failure to obey an order given by Lorentz inside the home—would have been obtained through other, lawful means. Thus, we conclude that the trial court erred in denying the motion to suppress.

Reversed and remanded.